**UNITED STATES v. SHAPIRO, Inc. et al.**

No. 11303.

United States Court of Appeals District of Columbia Circuit.

Argued Dec. 3, 1952.

Decided Feb. 19, 1953.

William R. Glendon, Asst. U. S. Atty., Washington, D. C., with whom Charles M. Irelan, U. S. Atty., and Joseph M. Howard, Asst. U. S. Atty., Washington, D. C., were on the brief, for appellant. Roger P. Marquis, Attorney, Department of Justice, Washington, D. C., also entered his appearance in behalf of the appellant.

Jo V. Morgan, Jr., Washington, D. C., with whom John J. Carmody, Washington, D. C., was on the brief, for appellees.

Before CLARK, PRETTYMAN and PROCTOR, Circuit Judges.

460

CLARK, Circuit Judge.

This is an appeal from a decision of the District Court dismissing appellant's complaint for an injunction and for damages for trespass to land. The action involves the National Zoological Park in Washington, owned by the United States Government, appellant here, and an unimproved and vacant lot adjoining the Zoo on the south, which is owned by appellees Shapiro. An iron mesh boundary fence, erected by the Government, separates the Zoo from Shapiro's land and then continues on past the end of the Shapiro property to separate the Zoo from a second parcel of Government land, controlled by the National Capital Parks.

The complaint alleges that Shapiro so changed the contour of his land as to divert the flow of surface water from its natural course into a northerly direction over and against the lands of the Zoo and that the water deposited dirt and debris in large quantities on the Zoo fence, as a result of which the fence was undermined, knocked down, and destroyed. In the course of the trial the Government in effect abandoned that part of the complaint which charged a direct invasion of its property along the common boundary line by the deposit of dirt and debris on its land or its fence and admitted that in the area where the Zoo borders directly on the Shapiro property there was at worst only a discharge of water as a result of Shapiro's operations. Upon that record, the trial court reached the conclusion that the damages claimed to have been sustained by appellant were *damnum absque injuria* and dismissed the complaint at the conclusion of the Government's case.

■ We find no error in the holding of the District Court. In this jurisdiction the rule is—as it is in all the states following the so-called "common law" or "Massachusetts" rule—that surface water is a common enemy which may be repelled or deflected onto the land of other proprietors, provided such deflection is the result of an ordinary use of the land and is not accomplished by means of channels, ditches or other extraordinary construction. See Baltimore & Ohio Railroad v. Thomas, 1911,

37 App.D.C. 255; Pearce v. Scott, 1928, 58 App.D.C. 257, 29 F.2d 630; Frisbie v. Cowen, 1901, 18 App.D.C. 381; 56 Am.Jur., Waters, § 69. Since appellees did nothing more than grade their land in a manner which was reasonable, usual, non-negligent, and not unexpected in a metropolitan area, and since they discharged nothing but surface water directly from their land onto the neighboring Zoo, they committed no wrong for which the law allows damages and no cause of action arose in favor of the Government.

■ On appeal, the Government abandoned its original claim, as set forth in the complaint, that damage was done to the fence where it divides the Zoo from Shapiro's land. Instead, appellant's case was argued here on the new theory that water flowed from the Shapiro property over onto the National Capital Parks land and then against the fence extension located between the National Capital Parks and the Zoo, carrying along with it soil and debris (from either or both the Shapiro and the National Capital Parks properties) to damage and knock down the Government fence *between the two parcels of Government property*. There was no proof below, nor even an allegation, that the dirt or soil which ultimately tore down the Government fence had at one time been a part of or deposited on appellees' land, or even that it was water from appellees' property which set in motion some portion of the soil of the National Capital Parks land to destroy the Government fence. But even if we were persuaded that the evidence permitted the conclusion that appellees' construction was in some way responsible for the destruction of that part of the fence for which the Government claims damages under its new theory, we would still not reverse upon the present state of the record. While in certain exceptional circumstances pleadings may be amended or deemed amended even in the appellate court to conform to the proof, this will not be allowed where such amendment would bring about the reversal of a judgment otherwise correct. United States v. Winkle Terra Cotta, 8 Cir., 1940, 110 F.2d 919.

Appellant, having failed to prove a cause of action under its original theory, cannot now obtain a reversal of an adverse decision below by trying its case on new and substituted issues here. The decision of the District Court is

Affirmed.