Causie BALLARD, Appellant,

v.

ACE WRECKING COMPANY and District
of Columbia, Appellees.

DISTRICT OF COLUMBIA, a municipal
corporation, Appellant,

v.

ACE WRECKING COMPANY, Appellee.

Nos. 5906, 6060.

District of Columbia Court of Appeals.

Argued Dec. 16, 1971.

Decided April 17, 1972.

R. Kenneth Mundy, Washington, D. C., for appellant Ballard.

David P. Sutton, Asst. Corporation Counsel, with whom C. Francis Murphy, Corporation Counsel, and Richard W. Barton, Asst. Corporation Counsel, were on the brief, for appellant in No. 6060 and appellee in No. 5906.

Neal A. Jackson and Colin R. C. Dyer, Washington, D. C., for appellee Ace Wrecking Company.

Before KELLY, FICKLING and YEAGLEY, Associate Judges.

YEAGLEY, Associate Judge:

Appellant, plaintiff below, Causie Ballard, noted this appeal after the trial judge granted a joint motion for judgment on behalf of the defendants, Ace Wrecking Company and the District of Columbia at the close of the plaintiff's evidence. The District of Columbia has also appealed from a judgment for Ace Wrecking Company on the cross claim of the former for indemnification for counsel fees expended in defense of the plaintiff's claim.

The plaintiff instituted this action by suing Ace Wrecking Company as agent and employee of the District of Columbia and the District of Columbia for their alleged joint and several negligence in causing damage to his property and house [1] located at 1315 Farragut Street, N.W. The District of Columbia then filed a cross claim against Ace Wrecking Company for indemnification of any sum recovered by the plaintiff against it and also for counsel fees and costs of its defense in the action since Ace had declined to undertake to represent it pursuant to their indemnity agreement.

The District of Columbia had acquired the four properties and the houses thereon adjacent to the Ballard property for the purpose of enlarging a nearby school. The District then contracted with Ace Wrecking Company for the demolition of the four houses between the school and the Ballard property. The demolition work was carried out some time in March 1970 and the basements of the houses were topped up with fill dirt. The grade from 1317 Farragut Street, adjacent to the Ballard property, was described as a "sloped downgrade". There was also testimony at trial that after the four houses were torn down the ground was leveled. Although it appears that as a result of the demolition the land on the four adjacent properties was completely denuded,[2] no evidence was introduced showing that the basic grade of the land had been changed.

The plaintiff alleged that as a result of a heavy rain on March 29, 1970, large quantities of mud, dirt, silt, and debris flooded his premises. The gravamen of the plaintiff's complaint is that the flooding occurred as a result of the negligence of Ace Wrecking Company in carrying out the demolition work and in not taking precautionary measures to protect the Ballard property after the demolition work was completed. The plaintiff maintains that the damage to his property resulting from the water running off the "demolition" lots onto his property could have been averted had the Ace Wrecking Company constructed a drainage ditch at the bottom of the grade as it did at a later date.

However, plaintiff's allegations of negligence presuppose the existence of a legal duty on the part of the defendants to protect the plaintiff's property. In the District of Columbia the discharge of sur-

---

1. Although plaintiff, Causie Ballard, owned the property at 1315 Farragut Street, he did not reside therein. The premises had been leased to a Mrs. Whitenberg and her daughter, Mrs. Burgan, for a period of more than 15 years and they occupied the house when the flooding occurred.

2. There was testimony at trial that prior to the demolition work the lot next to the Ballard property had "grass and stuff" and there had been no prior problems with flooding.

face waters is governed by the so-called "common law" or "Massachusetts rule"

. . . that surface water is a common enemy which may be repelled or deflected onto the land of other proprietors, provided such deflection is the result of an ordinary use of the land and is not accomplished by means of channels, ditches or other extraordinary construction. [Citations omitted.] [United States v. Shapiro, Inc., 92 U.S.App.D.C. 91, 92, 202 F.2d 459, 460 (1953).]

The instant case is practically on all fours with *Shapiro* wherein

. . . appellees did nothing more than grade their land in a manner which was reasonable, usual, non-negligent, and not unexpected in a metropolitan area, and since they discharged nothing but surface water directly from their land . . . they committed no wrong for which the law allows damages . . . . [92 U.S.App.D.C. at 92, 202 F.2d at 460.]

On this appeal, plaintiff raises the argument that *Shapiro* was narrowly limited in its application to the discharge of surface water; whereas in the case at bar, the water carried with it "great volumes of dirt, silt and debris."[3] We do not agree that *Shapiro* is so narrowly limited. Generally, it can be expected that surface water will carry with it some soil and the offscouring of the land. In the absence of negligence, according to the rationale of the "common enemy" doctrine, no liability will inure to the owner of the dominant or superior tract even where surface waters deposit soil on the land of the servient owner. Chamberlin v. Ciaffoni, 373 Pa. 430, 96 A.2d 140, 143 (1953).

The courts of a number of jurisdictions where the "common enemy" doctrine has been adopted as the basic rule of decision have modified that doctrine to some degree by importing into it qualifications based upon concepts of reasonable use or negligence. Annot., 59 A.L.R.2d 421, 426 (1958). Under the modified "common enemy" doctrine,

. . . surface water is considered a common enemy and each landowner, in the improvement or protection of his property, may fight it off as best he can, subject to the qualification that he must exercise his rights not wantonly, unnecessarily or carelessly, but in good faith and with such care as not to injure needlessly the property of the adjacent owner. [Citations omitted.] [Mason v. Lamb, 189 Va. 348, 53 S.E.2d 7, 10 (1949).]

In the case at bar, the evidence did not establish that the defendants acted wantonly, unnecessarily or carelessly in grading the adjoining lots. Nor was it shown that the defendants' use of the land was unreasonable. No evidence was introduced establishing that the original "sloped grade" between the Ballard property and the adjoining lots had been changed as a result of the demolition work. Moreover, the trial court found that the natural contour of the land had not been changed and that the demolition of the houses and denuding of the land by the defendants was not unusual or unreasonable.

Accordingly, since the defendants did nothing more than clear the land in a manner which was reasonable and non-negligent as they were entitled to do for the purposes of demolition and new construction, under the applicable rule governing surface waters in the District of Columbia as modified by the requisites of due care and reasonableness, there having been no showing of negligence on the part of the defendants and there being no duty on their part to construct a drainage ditch, the damages alleged to have been sustained by the plaintiff as a result of the heavy rain on March 29 are *damnum absque injuria.*

3. According to the testimony of Mrs. Burgan at trial the water entered the basement through a closed door and windows and the water and mud were ankle deep.

In view of our disposition of this portion of the case, we do not reach the plaintiff's other allegation of error.

■ Turning next to the issue of the District of Columbia's cross claim for indemnification against Ace Wrecking Company for counsel fees expended by the former in defense of the plaintiff's claim for damages stemming from their alleged joint negligence, we hold that the trial court did not err in finding no liability and accordingly affirm the judgment in favor of Ace Wrecking Company.

The indemnity agreement provided:

> . . . Contractor [Ace Wrecking Company] shall assume all risks incident to the work to be performed under this contract, and shall save harmless and indemnify the District of Columbia from any and all claims, delays, suits, costs, charges, damages, counsel fees, judgments, and decrees to which said District may be subjected at any time *on account of any injuries to persons or damage to property or premises that occur as a result of any act or omission of the Contractor in the prosecution of the work under this contract.* [Emphasis supplied.]

The District of Columbia contended that by virtue of the above agreement, Ace Wrecking Company was bound to defray the District's litigation expenses regardless of the outcome of the litigation on the plaintiff's claim. The substance of the District's complaint is that Ace's duty to indemnify the District of Columbia arose at the time Ballard's claim was first presented to the trial court by the filing of suit irrespective of any subsequent judicial determination of fault or lack thereof.

However, the trial court found, and we agree, that the above agreement was limited to " . . . only those things which resulted from an act or omission of the indemnitor [Ace Wrecking Company] . ."

The trial court ruled on Ballard's claim for damages that Ace Wrecking Company was not negligent in performing the demolition work and that the damage caused to the plaintiff's property was due to the heavy rainfall running over the natural contour of the land. According to the language of the agreement which was specific and unambiguous, indemnification was restricted to damages sustained "as a result of any act or omission of the Contractor in the prosecution of work under this [demolition] contract."

Consequently, it having been judicially determined that the demolition work was done in a non-negligent manner and that the contractor did not perform any act or omission resulting in damage or injury, the trial court's judgment in favor of Ace Wrecking Company is affirmed.

Affirmed.