**AMERICAN BUILDING MAINTENANCE COMPANY, Appellant,**

v.

**L'ENFANT PLAZA PROPERTIES, INC., et al., Appellees.**

Nos. 93–CV–1382, 93–CV–1468.

District of Columbia Court of Appeals.

Argued Jan. 11, 1995.

Decided March 16, 1995.

Edward J. Lopata, for appellant.

Steven R. Migdal, for appellees.

Before SCHWELB and FARRELL, Associate Judges, and GREENE, Associate Judge of the Superior Court of the District of Columbia.*

SCHWELB, Associate Judge:

Invoking different provisions in the same indemnification agreement, each of two successful defendants in a "slip-and-fall" lawsuit has sought payment of its counsel fees from its codefendant. Each defendant has denied, on the other hand, that it has any obligation to indemnify its codefendant for the codefendant's counsel fees. We hold that under the terms of the parties' contract, properly construed, neither party has a right to indemnification.

### I.

L'Enfant Plaza Properties, Inc. and Loews Washington Hotel Corp. (collectively L'Enfant) [1] own and manage the L'Enfant Plaza Hotel in southwest Washington, D.C. At all times relevant to this dispute, American Building Maintenance Company of New York (ABM) provided janitorial and related services to L'Enfant pursuant to a written service agreement.

On March 19, 1991, Michele Saranovich filed suit against L'Enfant, alleging that she had slipped and fallen on the marble floor of the hotel lobby, and that she had suffered personal injuries on account of L'Enfant's negligence. L'Enfant filed an answer, in which it denied negligence, and a third-party complaint against ABM, in which it sought indemnification. L'Enfant claimed in essence that it had exercised due care, and that if Ms. Saranovich's allegations regarding the accident were correct, then her injuries resulted from ABM's negligence, not L'Enfant's. ABM responded to the third-party complaint by denying negligence and by cross-claiming against L'Enfant for indemnification. Ms. Saranovich filed an amended complaint in which she named both L'Enfant and ABM as defendants and alleged negligence on the part of both.

The case went to trial and, on April 8, 1993, the judge directed a verdict in favor of both defendants. The judgment established that no negligence had been proved on the part either of L'Enfant or of ABM. Both parties against whom a claim for indemnification has been made have thus been exonerated of any tortious conduct. No appeal was taken from the judgment.

Paragraph 8 of the Janitorial Service Agreement between L'Enfant (as Owner) and ABM (as Contractor) provides in pertinent part as follows:

[1] Contractor shall indemnify and hold harmless Owner from claims for injury, death and property damage due to negligent acts and omissions of Contractor, its agents and employees which arise out of work performed under this Agreement.

\* \* \* \* \* \*

[2] Owner shall indemnify and hold harmless Contractor from claims, including Workers' Compensation claims, resulting from the condition of Owner's premises or equipment.

(Bracketed numerals inserted.) [2] The parties vigorously contested the meaning of these provisions, with L'Enfant claiming a right to indemnification under the first and ABM asserting that it was entitled to indemnification under the second. The judge issued two written decisions construing the agreement, one on July 1, 1993 and a second on September 21, 1993. The judge ruled that Clause 1 is plain and unambiguous and that "it is clear that the parties intended for the indemnification clause to become effective upon the filing of a claim." He held that "[a] finding of negligence is not required to

---

* Sitting by designation pursuant to D.C.Code § 11–707(a) (1989).

1. There is some dispute between the parties as to the precise role in this litigation of these two corporations. Our disposition of the merits makes it unnecessary to resolve this dispute.

2. Clause 1, quoted above, is followed by a sentence which we shall call Clause 1A:

Contractor shall not be liable for delay, loss or damage caused by warfare, riots, strikes, boycotts, criminal acts, acts or omissions of others, fire, water damage, natural calamity, or causes beyond Contractor's reasonable control.

Neither party has quoted or relied on Clause 1A.

trigger the indemnification clause as ABM contends; a filing of a claim due to the alleged negligence of ABM, its agents, or employees is." [3] The judge also invoked the principle that "when the negligence of one tortfeasor is primary, and that of the other is secondary, the latter is entitled to indemnification from the former." He concluded that "[a]s the alleged secondary tortfeasor, [L'Enfant] ... is entitled to indemnification by the alleged primary tortfeasor, ABM." (*Id.*)

With respect to Clause 2, the judge concluded that the "more ambiguous" term "condition" should *not* be construed as making L'Enfant responsible even for conditions which it did not create. Such a construction, according to the judge, would "shift the burden of ABM's negligence to [L'Enfant], which is precisely adverse to the contract's terms." Accordingly, the judge held that ABM was not entitled to indemnification.

On October 27, 1993, in conformity with his construction of the agreement, the judge awarded L'Enfant a total of $16,462.19 in fees and costs, including $15,092.00 in counsel fees. ABM filed separate timely appeals from the orders of July 1, 1993 and October 27, 1993.

## II.

■ "[T]he cardinal rule of interpretation [of contracts] is to ascertain, if possible from the instrument itself, the intention of the parties, and to give effect to that intention." *Green v. Obergfell,* 73 App.D.C. 298, 311 n. 39, 121 F.2d 46, 59 n. 39 (citation omitted), *cert. denied,* 314 U.S. 637, 62 S.Ct. 72, 86 L.Ed. 511 (1941). If the contract is ambiguous, its language should be read in the light of all the surrounding facts and circumstances, including the conduct of the parties. *Id.*

■ Contractual language is ambiguous if it is susceptible of more than one reasonable interpretation. *Howard Univ. v. Best,* 484 A.2d 958, 966 (D.C.1984). The question whether a writing is ambiguous is one of law. *Clyburn v. 1411 K St. Ltd. Partnership,* 628 A.2d 1015, 1017 (D.C.1993). Accordingly, an appellate court owes no deference to the trial court's resolution of that question, but considers the issue *de novo.* *Sacks v. Rothberg,* 569 A.2d 150, 154 (D.C.1990). For reasons set forth below, we discern substantial ambiguity in the indemnification provisions of this contract.

■ Generally, the interpretation of an ambiguous agreement is for the trier of fact. *Best, supra,* 484 A.2d at 966–67. But indemnity agreements in which an innocent indemnitor agrees to indemnify an indemnitee are "narrowly construed by the courts so as not to read into them any obligations [which] the parties never intended to assume." *Cf. Rivers & Bryan, Inc. v. HBE Corp.,* 628 A.2d 631, 635 (D.C.1993) (citation omitted). As Justice Souter stated for the court in *Hamilton v. Volkswagen of Am., Inc.,* 125 N.H. 561, 484 A.2d 1116 (1984), "indemnity agreements are rarely to be implied and always to be strictly construed." *Id.* 484 A.2d at 1118; *see also Smith v. Tenneco Oil Co., Inc.,* 803 F.2d 1386, 1388 (5th Cir.1986); *Wyoming Johnson, Inc. v. Stag Indus., Inc.,* 662 P.2d 96, 99 (Wyo.1983). "[T]here is no liability to indemnify unless it is plainly spelled out in the contract." *Rosado v. Proctor & Schwartz, Inc.,* 106 A.D.2d 27, 483 N.Y.S.2d 271, 274 (1st Dept.1984).

■ The rule of strict construction applies with particular force where a party is seeking indemnification for costs incurred as a result of its own negligent acts or omissions. *Rivers & Bryan, supra,* 628 A.2d at 635; *see also Wyoming Johnson, Inc., supra,* 662 P.2d at 99 (citing 41 AM.JUR.2D, *Indemnity,* §§ 15 & 16, at 699–704 (1963)). Narrow construction is equally appropriate where, as here, a party from which indemnity is sought has engaged in no wrongful or tortious conduct. *Cf. Rivers & Bryan, supra,* 628 A.2d at 635; *Hill v. American President Lines, Inc.,* 194 F.Supp. 885, 891 (E.D.Va.1961).

The character of the indemnification sought is also significant. Here, each defendant is seeking payment of its counsel fees

---

**3.** In denying ABM's motion for reconsideration, the judge also held that ABM was estopped from arguing that its obligation to indemnify could be triggered only by a finding of negligence because, in his view, ABM had previously argued the contrary. See note 6, *infra.*

from its codefendant. "Generally, under the 'American Rule,' absent express statutory authorization or a contractual provision, each party is responsible for its own attorneys' fees." *Schlank v. Williams*, 572 A.2d 101, 108 (D.C.), *cert. denied*, 498 U.S. 938, 111 S.Ct. 341, 112 L.Ed.2d 306 (1990).

■ The parties appear to have assumed that if the indemnification agreement applies to this controversy, it requires the indemnitor to compensate the indemnitee for the indemnitee's counsel fees. The principles of narrow construction outlined above have been applied to the scope of the indemnitor's duty as well as to its existence, however, and the courts have not readily inferred an obligation to indemnify a party for such fees in the absence of explicit and unambiguous contractual language so providing. *See, e.g., Queen City Coach Co. v. Lumberton Coach Co.*, 229 N.C. 534, 50 S.E.2d 288, 289 (1948); *French v. Isham*, 801 F.Supp. 913, 924 (D.R.I.1992); *Barber Blue Sea v. Trailer Marine Transp. Corp.*, 725 F.Supp. 1220, 1221 (S.D.Fla.1989); *Nicholson v. Great Lakes Towing Co.*, 185 F.Supp. 685, 688 (N.D.Ohio 1960); *cf. Oelrichs v. Spain*, 82 U.S. (15 Wall.) 211, 230–31, 21 L.Ed. 43 (1872). Where the contractual language is unclear on the question, an obligation to pay counsel fees is not to be inferred, except in cases in which the indemnitee is willing to step aside and turn over to the indemnitor complete control over the litigation. *Cf. Hill, supra*, 194 F.Supp. at 891.[4]

In *French, supra*, the court aptly summarized the foregoing principles:

It is well settled that indemnity provisions are to be strictly construed against the party alleging a right to indemnification. *Muldowney v. Weatherking Products, Inc.*, 509 A.2d 441, 443 (R.I.1986). *See also Gordon v. Campanella Corp.*, 112 R.I. 417, 311 A.2d 844, 849–50 (1973) (citations omitted) ("Where money is sought because of an indemnity provision in a contract, we have emphasized that such clause will be strictly construed against the indemnitee"); *Dower v. Dower's Inc.*, 100 R.I. 510, 217

A.2d 437, 438 (1966) ("Following the rule that indemnity provisions must be strictly construed against the indemnitee, the courts in most of the states have refused to draw inferences from words of general import found in the apparently all-inclusive and catchall language of a general indemnity provision.").

French's [the indemnitor's] analysis of Pretzer's [the indemnitee's] claims is wholly accurate:

The indemnity provision in the Release does not refer to attorneys' fees, litigation expenses or court costs. Absent such specificity, the Release must be construed against Pretzer to exclude such items. There is no basis, therefore, to award attorneys' fees to Pretzer.

.... A strict construction of the phrase "all loss and damage" does not permit me to read "including attorneys' fees" into the phrase. Had Pretzer and French intended Pretzer to be indemnified for attorneys' fees and court costs, they could easily have written the Release to read, "Pretzer is hereby indemnified against all loss and damage, *including attorneys' fees and related litigation expenses ...*" However, it is not within the province of the Court to retroactively reformulate the terms of the parties' Release; accordingly, Pretzer's claim for indemnification from French for attorneys' fees is denied.

801 F.Supp. at 924 (emphasis in original).

■ Finally, paragraph 8 of the parties' agreement was part of a proposal prepared by ABM. Ambiguous language in a contract is generally construed against the drafter, at least where the parties were relatively equal in bargaining power. *District of Columbia Dep't of Housing & Community Dev. v. Pitts*, 370 A.2d 1377, 1379–80 (D.C. 1977) (per curiam); *see Dano Resource Recovery, Inc. v. District of Columbia*, 620 A.2d 1346, 1353 (D.C.), *cert. denied,* —— U.S. ——, 114 S.Ct. 343, 126 L.Ed.2d 308 (1993). "[A] party who takes an agreement prepared by another, and upon its faith incurs obligations or parts with his property, should have a

---

**4.** It has been held, on the other hand, that "[t]he obligation to defend, at no cost to the [indemnitee], may fairly be interpreted as meaning that the parties intended ... the indemnitor to pay attorney's fees." *Perry v. Chevron USA, Inc.*, 887 F.2d 624, 629 (5th Cir.1989).

construction given to the instrument favorable to him." *Noonan v. Bradley,* 76 U.S. (9 Wall.) 394, 407, 19 L.Ed. 757 (1869). This canon of construction, known as *contra proferentem,* is a "secondary" standard of interpretation, *Pitts,* 370 A.2d at 1379–80, and "inferior to extrinsic proof of the parties' agreement, or to other authority revealing that understanding." *Carey Canada, Inc. v. Columbia Casualty Co.,* 291 U.S.App.D.C. 284, 290–91, 940 F.2d 1548, 1554 (1991) (citation omitted).

### III.

■ We now apply the principles discussed above to Clause 1. L'Enfant asserts, and the trial judge held, that the language of that provision is unambiguous, and that Clause 1 was intended to become effective upon the filing of a claim. ABM agrees that the clause is unambiguous, but contends that its clear meaning is the opposite of that found by the trial judge. According to ABM, liability pursuant to Clause 1 must be premised upon a negligent act or omission on the part of ABM; a claim of negligence, says ABM, will not do.

"Disagreement between the parties as to the meaning of a contract does not, *ipso facto,* render it ambiguous." *Clyburn, supra,* 628 A.2d at 1017 (citation omitted). Nevertheless, in this instance, we discern two critical ambiguities in the contractual language. The first ambiguity relates to the circumstances under which an obligation to indemnify arises, and the second to the extent of any such obligation.

Clause 1 provides, in pertinent part, that "[ABM] ... shall indemnify and hold harmless [L'Enfant] from claims of injury ... due to negligent acts or omissions of [ABM]." It is unclear from this language whether the injury must *in fact* be due to ABM's negli-

gence, or whether the phrase "injury ... due to negligent acts or omissions of [ABM]" is simply descriptive of the kind of *claim* which must be filed. Clause 1 can reasonably be read in either way. In accordance with the authorities discussed in Part II of this opinion, uncertainty on this score must be resolved against the party seeking indemnification, here L'Enfant.

In *Ballard v. Ace Wrecking Co.,* 289 A.2d 888 (D.C.1972), this court held, where a contractor and the District of Columbia had entered into an indemnity agreement which contained language comparable but not identical to that in the present case, that the nonnegligent contractor was *not obligated* to pay the District's counsel fees. In *Ballard,* the agreement provided that the contractor shall "save harmless and indemnify the District ... from any and all *claims,* delays, suits, costs, changes, damages, counsel fees, judgments and decrees to which said District may be subjected at any time on account of any injuries to persons ... that occur *as a result of any act or omission of the Contractor in the prosecution of the work under this Contract." Id.* at 891 (emphasis added). Although the contract in *Ballard,* like the one in this case, provided for indemnification, *inter alia,* for claims, the court construed it as precluding the imposition of a duty to indemnify the District where the court had determined that the contractor had performed the work in a non-negligent manner. *Id.*[5]

■ Moreover, even if we were to assume that the obligation to indemnify pursuant to Clause 1 was triggered by the making of a claim of negligence—and we have held the contrary—that clause is silent on the question whether ABM's duty to indemnify L'Enfant and to hold it harmless was intended to embrace the payment of L'Enfant's

---

5. The trial judge, as we have seen, relied on authorities holding that a "secondary" tortfeasor may be entitled to indemnification from the primary tortfeasor. *See, e.g., Nordstrom v. District of Columbia,* 213 F.Supp. 315, 318 (D.D.C.), *aff'd,* 117 U.S.App.D.C. 165, 168–69, 327 F.2d 863, 866–67 (1963). Because ABM, like the contractor in *Ballard,* was exonerated of any tortious conduct, ABM was not a primary tortfeasor (or, indeed, a tortfeasor at all). Accordingly, in our view, the reasoning of decisions like *Nordstrom,* which are grounded on a finding that one liable party's fault or responsibility for the harm exceeded the other's, *see, e.g., R & G Orthopedic Appliances, Inc. v. Curtin,* 596 A.2d 530, 544–45 (D.C.1991), cannot apply.

counsel fees.[6] In light of the authorities cited at pages 862–863 of this opinion, this ambiguity must also be resolved against L'Enfant, especially where, as here, this remedy is being sought against an innocent party. We note that there is nothing in the agreement to suggest that L'Enfant had the right to demand that ABM take over the defense of L'Enfant in the underlying action by Ms. Saranovich, and L'Enfant plainly did not so demand, electing instead to file a third party complaint.[7]

For the foregoing reasons, we cannot agree with the trial judge's ruling that Clause 1 required ABM to pay L'Enfant's counsel fees. L'Enfant did not invoke the canon of construction favoring resolution of ambiguities against the drafter, and in this instance that secondary canon is trumped in any event by the authorities on which we have relied.

## IV.

■ Clause 2 requires L'Enfant to "indemnify [ABM] from claims resulting from the condition of [L'Enfant's] premises...." ABM contends that, in contradistinction to Clause 1, Clause 2 "unambiguously" predicates L'Enfant's liability on the filing of a claim, and not on a finding of negligence. ABM further asserts that Ms. Saranovich's injuries resulted from a "condition" of the premises as to which L'Enfant was contractually required to indemnify ABM, notwithstanding the fact that this "condition" was of the very kind that its janitorial services were designed to prevent.

We reject ABM's contention for several reasons. First, like Clause 1, Clause 2 does not explicitly provide for the payment of counsel fees, and no such obligation should be inferred where, as here, ABM wrote the agreement. Second, the word "condition" can reasonably be viewed as meaning "defective" condition, and if this is so, then Clause 2 contains an ambiguity similar to that in Clause 1, namely, whether the condition must *actually* be defective, or whether a *claim* of defectiveness is sufficient. Third, the agreement, and particularly paragraph 8, must be read as a whole, and it would be altogether unreasonable to construe a form contract drafted by ABM as obliging ABM to indemnify L'Enfant only in instances when ABM was actually at fault, but as requiring L'Enfant to indemnify ABM on the basis of a plaintiff's claim—here proved to be a fallacious one—that L'Enfant was negligent. "[W]hen an instrument is susceptible of two constructions—the one working injustice and the other consistent with the right of the case—that one should be favored which standeth with the right." *Noonan, supra,* 76 U.S. (9 Wall.) at 407. Especially in light of our holding in ABM's favor with respect to Clause 1, ABM's proposed reading of Clause 2 cannot be sustained.

## V.

For the foregoing reasons, the order of July 1, 1993, which is the subject of No. 93–CV–1382, is affirmed in part and reversed in part. The order of October 27, 1993, which is the subject of No. 93–CV–1468, is reversed. The case is remanded to the trial court with directions to vacate the award in

---

6. In *Ballard,* by contrast, the indemnification clause explicitly included counsel fees. *Id.,* 289 A.2d at 891.

The trial judge concluded that *Ballard* was not decisive as to Clause 1 because, in his view, ABM had previously taken the position that the indemnification agreement became operative upon the assertion of a claim, rather than upon a finding of liability, and that ABM should not be permitted to argue the contrary. ABM had made this contention, however, in relation to Clause 2, relying on specific language in that clause which differed in some measure from that in Clause 1. Under these circumstances, we cannot agree with the trial judge's view that principles of estoppel apply.

7. Clause 1A, quoted in note 2, *supra,* provides that ABM shall not be liable, *inter alia,* for "acts or omission of others ... or causes beyond [ABM's] reasonable control." It is difficult to reconcile this provision with the notion that ABM must pay L'Enfant's counsel fees when ABM has been judicially exonerated of any responsibility for Ms. Saranovich's accident, and when her injuries thus appear to have resulted from causes over which ABM had no control. Because the parties have not addressed the meaning or purpose of Clause 1A, however, we elect not to place major reliance on that clause, and reach our decision instead on the basis of Clause 1, appropriately construed.

L'Enfant's favor and to enter judgment in favor of ABM on L'Enfant's claim for indemnity and in favor of L'Enfant on ABM's claim for indemnity.

*So ordered.*