801 F.2d 257
 7 Employee Benefits Ca 2092
 John F. SPICKERMAN, Sr., Plaintiff/Counterdefendant-Appellee,
v.
CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS HEALTH AND
WELFARE FUND, et al.,
Defendants/Counterplaintiffs-Appellants,
and
William E. Brock, Secretary of Labor, Intervening Defendant-Appellant.
 Nos. 85-1361, 85-1723.
 United States Court of Appeals,
Seventh Circuit.
 Argued Jan. 23, 1986.
Decided Sept. 4, 1986.
 
 Allen H. Feldman, Associate Sol., Dept. of Labor (James K. Beck, on brief), Washington, D.C., for intervening defendant-appellant.
 Wade B. Cowan, Gracey, Maddin, Cowan & Bird, Nashville, Tenn., for plaintiff/counterdefendant-appellee.
 William J. Nellis, Chicago, Ill., for defendants/counterplaintiffs-appellants.
 Before BAUER, COFFEY and RIPPLE, Circuit Judges.
 RIPPLE, Circuit Judge.
 
 
 1
 The appellee, John F. Spickerman, formerly served as a trustee of the appellants Central States, Southeast and Southwest Areas Health and Welfare Fund (Welfare Fund) and Central States, Southeast and Southwest Areas Pension Fund (Pension Fund). On October 7, 1983, he filed this diversity action to enforce contractual rights allegedly created under each fund's controlling trust agreement. Specifically, Mr. Spickerman sought to compel both funds to reimburse him--on an ongoing basis--for attorneys' fees which he has been incurring in the defense of a separate action brought by the Secretary of Labor (Secretary). The appellants, the two funds and the Secretary, responded by arguing that 1) Mr. Spickerman had no legally enforceable contractual right to the attorneys' fee payments, and 2) even if he had such a right, payment prior to Mr. Spickerman's ultimate exculpation on the underlying charges would violate the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. Sec. 1001 et seq.
 
 
 2
 On cross-motions for summary judgment, the district court found in favor of Mr. Spickerman. The court held that his "rights are currently enforceable as a simple matter of trust and contract law ... [and] ERISA does not preclude enforcement of these rights at this time." Spickerman v. Central States, Southeast and Southwest Areas Health and Welfare Fund, No. 83 C 7966 (N.D.Ill. Mar. 1, 1985). Thus, the court ordered the Welfare Fund to pay all of Mr. Spickerman's outstanding attorneys' fees and "to continue to pay the reasonable costs of defense until such time as a final judgment is entered in the underlying litigation." Id.
 
 
 3
 After reviewing the record and the arguments in this court, we believe that there are disputed issues of material fact concerning the existence of Mr. Spickerman's contractual rights. Accordingly, we reverse the district court's decision granting summary judgment in favor of Mr. Spickerman and we remand this case for further proceedings.
 
 
 4
 * From 1967 until April 30, 1977, John Spickerman served as a trustee for both the Central States, Southeast and Southwest Areas Health and Welfare Fund and the Central States, Southeast and Southwest Areas Pension Fund. As a result of this activity, he and other former trustees were named as defendants in an October 16, 1978 suit brought by the Secretary of Labor. In that suit, Ford v. Robbins, No. 78 C 4075 (N.D.Ill.), the Secretary alleged that Mr. Spickerman and the other trustees had breached ERISA's fiduciary duties through their dealings with Amalgamated Insurance Agency Services, Inc., a firm which was retained by the trustees to provide claim-processing services. In defending against the Robbins action, Mr. Spickerman incurred, and continues to incur, legal fees and costs.[1] In the present litigation, he contends that both the Welfare Fund and the Pension Fund are obligated to reimburse him on a continuing basis for those expenses. His argument is based on the following information.
 
 
 5
 The Trust Agreements. At the time that this action was filed, both the Welfare Fund and the Pension Fund were controlled by similar trust agreements. Prior to October 11, 1976, Article VI, section 6 of each agreement provided for the reimbursement of legal expenses incurred by active trustees. On that date, while Mr. Spickerman was still serving as a trustee, Article VI, section 6 of each agreement was amended to provide as follows:
 
 
 6
 Sec. 6. Expenses--All proper and necessary expenses incurred by any former or incumbent Trustee, including costs of defense in litigation arising out of the Trusteeship for this Fund, and also including costs incurred by any former or incumbent Trustee in providing testimony or information about administration of this Fund in any investigation, trial or other proceeding, shall be paid out of the Trust Fund, as a matter of right of any such former or incumbent Trustee, to the extent permitted by applicable law. As used in the preceding sentence, the term "costs" includes but is not limited to reasonable attorneys' fees.
 
 
 7
 Appellants' App. at 16. Notably, this provision guarantees, "as a matter of right," the payment of litigation costs incurred by former trustees.
 
 
 8
 The Policy. To implement this section, the Pension Fund's trustees adopted a Litigation Defense Costs Policy (Policy) at their February 15, 1978 meeting. Appellants' App. at 17-23. In taking this action, the trustees noted that:
 
 
 9
 it is in the best interest of the participants and beneficiaries of this Fund that the broad indemnification principles which have previously existed be codified by this formal resolution, in order to provide an incentive to capable and loyal individuals to retain or accept positions of responsibility in this Fund and to perform valuable services on behalf of this Fund.
 
 
 10
 Appellants' App. at 20 (emphasis added). At the time this policy was adopted, Mr. Spickerman was no longer a trustee of the funds, and the Robbins litigation had not yet been filed.
 
 
 11
 The Resolution. On November 22, 1978, one month after the Robbins litigation was filed, the Welfare Fund's trustees exercised their Policy discretion by adopting the Robbins Resolution (Resolution). Appellants' App. at 24-26. In the Resolution, the Welfare Fund acknowledged the Policy's continued existence and affirmatively recognized that the sixteen individuals named as defendants in Ford v. Robbins --the Department of Labor (DOL) litigation in which Mr. Spickerman was charged--were persons who not only were covered under the Policy but also were charged with committing acts which were covered by the Policy. The Resolution concluded by obligating the Welfare Fund to pay each defendant's litigation expenses provided that the trustees: 1) found the requested amounts to be reasonable, and 2) determined that the defendant was not already covered by insurance or some other reimbursement plan.
 
 
 12
 Pursuant to the Resolution, William J. Nellis, an attorney for the Welfare Fund, instructed Mr. Spickerman and the other Robbins defendants to "submit ... [their] itemized billings directly to the Fund." Appellants' App. at 27. Mr. Spickerman complied, and the Welfare Fund paid his attorneys' statements, as billed, from September 1981 until November 1982.
 
 
 13
 In November 1982, the Welfare Fund ceased its payment of Mr. Spickerman's attorneys' fees. That action came just one month after the Department of Labor threatened the Welfare Fund with the possibility of ERISA liability as a result of its litigation cost policy. R.56, Exhibit H. In October 1983, Mr. Spickerman filed this suit to compel both the Pension Fund and the Welfare Fund to pay his attorneys' fees and to continue paying those fees as they came due.
 
 
 14
 On February 17, 1984, Mr. Spickerman filed a motion for partial summary judgment against the Welfare Fund alone. He sought judgment on all issues in this case except the reasonableness of the then outstanding attorneys' fees. On April 6, 1984, the Secretary filed a motion for leave to intervene as a party defendant. That motion was granted, and on September 7, 1984, the Secretary filed a motion for summary judgment on all of Mr. Spickerman's claims. The district court denied the Secretary's motion and granted Mr. Spickerman's motion for partial summary judgment. Finding no just cause for delay, the court directed the entry of judgment pursuant to Fed.R.Civ.P. 54(b). Both the Secretary and the Fund appeal.
 
 II
 
 15
 Summary judgment may be granted only if the record indicates "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). As we stated in Munson v. Friske, 754 F.2d 683, 690 (7th Cir.1985) (citations omitted):
 
 
 16
 In reviewing a summary judgment, an appellate court must veiw the entire record and the inferences drawn therefrom in the light most favorable to the party opposing the motion. If a study of the record reveals that inferences contrar,)r to those drawn by the trial court might be permissible, then the summary summary judgment should be reversed.
 
 
 17
 In applying this standard to the facts of this case, we hold that summary judgment in favor of Mr. Spickerman was inappropriate. The existence of a disputed issue of material fact concerning Mr. Spickerman's contractual right to continued interim attorneys' fees requires that we remand this case to the district court for further proceedings.
 
 
 18
 In reviewing the record in this case, we find that the motions for summary judgment were litigated on what can most charitably be termed an "underdeveloped" record. However, it is clear that the Welfare Fund intended that Mr. Spickerman be covered by the Litigation Defense Costs Policy.[2] First, Mr. Spickerman is a former trustee; therefore, he is a "Covered Person" as that term is defined under the Policy. Second, by adopting the Resolution, the Welfare Fund recognized that the violations alleged against Mr. Spickerman were covered by the Policy. And finally, persuasive evidence of the Welfare Fund's intent is found in the fact that it made payments to Mr. Spickerman for over one year. Therefore, absent some redetermination regarding the applicability of the Policy to the Robbins litigation, the Welfare Fund has demonstrated its intention to pay Mr. Spickerman's attorneys' fees.
 
 
 19
 While the Policy clearly contemplates that, under usual circumstances, payments are to be made on a periodic basis,[3] there remains a triable issue of fact as to whether the Fund properly exercised its discretion in determining that periodic payments were not reasonable in this particular instance. While a party resisting summary judgment may not rest on unsupported allegations, see First Commodity Traders, Inc. v. Heinold Commodities, Inc., 766 F.2d 1007, 1011 (7th Cir.1985), we believe that the papers submitted--including the affidavit of Mr. Nellis, counsel for the Fund--raise, albeit minimally, the possibility that further development of the evidence will demonstrate that the Fund acted within the bounds of its discretion in ceasing periodic payments to Mr. Spickerman. The Secretary argues that, by stopping its payments, the Welfare Fund affirmatively exercised its authority to determine that Mr. Spickerman's litigation costs were not "proper and necessary expenses" as contemplated in Article VI, section 6 of the trust agreement. While the Secretary has not, at this point, presented substantial proof to support his theory, he is able to show a weak correlation between the termination of payments and the Welfare Fund's receipt of the DOL letter threatening ERISA liability if those payments were to continue. In addition, the Secretary alleges that the Welfare Fund is currently investigating the propriety of the attorneys' fee payments. Based on this information, the Secretary submits, in essence, that the Welfare Fund has rescinded, or at least modified, the Resolution. This characterization of the trustees' action is, of course, entirely different from that tendered by Mr. Spickerman. He contends that the termination of payments was an unreasonable exercise of the trustees' authority under the trust agreement and Policy.[4]
 
 
 20
 On this record, therefore, we hold that the district court erred by concluding, as a matter of law, that Mr. Spickerman had an enforceable right to the periodic payment of attorneys' fees.[5] We therefore reverse the district court's grant of partial summary judgment and remand this action for further proceedings.
 
 
 21
 REVERSED AND REMANDED.
 
 
 
 [1]
 On May 27, 1986, the district court entered judgment in Brock v. Robbins, No. 78 C 4075 (N.D.Ill.). The Secretary of Labor's action against all remaining defendants, including Mr. Spickerman, was dismissed. An appeal from that judgment is now pending in this court
 
 
 [2]
 We note that the trust agreement authorized former trustees to receive reimbursement for their litigation costs, including attorneys' fees, "as a matter of right." Appellants' App. at 16. Additionally, the Policy--the document which implemented the trust agreement--explicitly indicates that, rather than create new rights, it merely codifies "principles which have previously existed." Appellants' App. at 20
 The Policy explicitly authorizes the payment of all "reasonable costs of defense." Appellants' App. at 21. While it also gives the trustees absolute discretion and authority to determine all questions of Policy coverage, it specifically defines "Covered Person" to include any former trustee of the Fund. Id. Similarly, the Policy defines "Covered Act" to include "any alleged act ... during the course of service by the Covered Person." Id. Thus, since these two definitions limit the trustees' "absolute discretion," it appears that their discretion would properly be exercised primarily for determining whether claimed attorneys' fees and expenses amount to "reasonable costs of defense," id., and whether a specific act is excluded from coverage because the "Covered Person" has admitted his culpability or "will probably be adjudged to have been a knowing participant in the alleged dishonesty or fraud." Appellants' App. at 22.
 
 
 [3]
 It seems clear that interim payments of attorneys' fees were contemplated by the Policy. Paragraph B(5) of the Policy, the provision which gives the Welfare Fund a right to recourse against any person covered by the Policy, provides that:
 if at the conclusion of the litigation the Covered Person shall have been adjudged liable or responsible for a breach of fiduciary responsibility owed to participants and beneficiaries of the Fund, all Policy Coverage pursuant to this Policy shall then be retroactively forfeited, and the Covered Person shall then be obligated to make immediate restitution of all payments by the Fund on his behalf....
 Appellants' App. at 23. This section would be meaningless unless a "Covered Person" was entitled to receive interim fee payments prior to the conclusion of his litigation.
 
 
 [4]
 If the trustees and the Secretary ultimately prevail on their characterization of the refusal to make periodic payments, we leave it to the district court to determine, in the first instance, whether Mr. Spickerman may still rely on an estoppel theory
 
 
 [5]
 Because of our disposition of this case, we do not need to reach the ERISA issues which the appellants have argued. It would be improper for us to address these novel questions before we are certain that a right to interim attorneys' fee payments exists. Although the district court has entered judgment for Mr. Spickerman, see supra note 1, an appeal has been filed in this court. Therefore, these issues are not moot