Carl MOORE, Administrator of the Sheet
Metal Workers' National Pension Fund,
and the Sheet Metal Workers' National
Pension Fund, Plaintiffs,

v.

Edward I. WILLIAMS, et al., Defendants.

No. C 94–0097.

United States District Court,
N.D. Iowa,
Cedar Rapids Division.

Sept. 29, 1995.

John O'B. Clark of Highsaw, Mahoney & Clarke, P.C., Washington, DC, and Roger Stone of Simmons, Perrine, Albright & Ellwood, L.L.P., Cedar Rapids, Iowa, for Plaintiffs.

Joseph F. McDonough of Manion, McDonough & Lucas, P.C., Pittsburgh, Pennsylvania, for Defendant Edward I. Williams.

## MEMORANDUM OPINION AND ORDER REGARDING DEFENDANT WILLIAMS'S MOTION FOR PARTIAL SUMMARY JUDGMENT

BENNETT, District Judge.

This litigation involves, *inter alia,* claims under ERISA that one of the defendants breached his fiduciary duty to the plaintiff pension fund. That defendant, while denying that he was a fiduciary of the fund, asserted in a counterclaim that, pursuant to an indemnification agreement, he was entitled to indemnification for and advance of his attorneys fees and other litigation expenses from the pension fund to defend against the pension fund's claim that he breached his fiduciary duties. The defendant has now moved for partial summary judgment solely on his entitlement to advancement of legal fees.

### I. INTRODUCTION

Plaintiffs Carl Moore, as Administrator of the Sheet Metal Workers' National Pension

Fund, and the Sheet Metal Workers' National Pension Fund itself ("the Fund"), filed the complaint in this matter on April 29, 1994. The complaint is in five counts, only two of which allege causes of action against defendant Edward I. Williams. Those counts allege that Williams, during his employment with the Fund, was a "fiduciary" of the Fund under § 3(21)(A) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1002(21)(A), and that, as such a fiduciary, Williams breached his fiduciary duties to the Fund under § 404(a)(1)(B) of ERISA, 29 U.S.C. § 1104(a)(1)(B), in various ways during the years 1989 and 1990.

Williams answered the complaint on July 11, 1994, and asserted with his answer a counterclaim for attorneys' fees and costs and demanding judgment for "all amounts, including attorneys' fees and costs, incurred by Williams as a result of plaintiffs' failure to provide indemnity." Williams's counterclaim is founded on a September 22, 1993, Amended and Restated Agreement and Declaration of Trust ("Agreement"), which he alleges requires the Fund to indemnify him for and advance to him the costs of defending this action. The plaintiffs filed a reply to Williams's counterclaim on August 3, 1994, denying the existence of an agreement to indemnify Williams and asserting, in the alternative, that Williams is not entitled to indemnification "because Williams breached his obligations to the Fund."

On October 11, 1994, Williams moved for partial summary judgment as to part of his counterclaim. Williams asserts that there is no genuine issue of material fact that the indemnification Agreement exists and is applicable to him, and that he is entitled, as a matter of law, to advancement of legal fees pursuant to that agreement. Williams contends that the Agreement is clear and unambiguous, and both permitted and encouraged by law and public policy. Williams asserts further that the plaintiffs' defense of Williams's alleged breach of obligations to the fund is no defense to advancement of funds prior to determination of his liability on the breach of fiduciary duty claim.

On November 17, 1994, plaintiffs resisted Williams's motion for partial summary judgment. Plaintiffs contend that there is a genuine issue of material fact as to whether Williams is a fiduciary of the Fund, and hence a genuine issue of material fact as to his entitlement to advancement of his legal fees to defend the breach of fiduciary duty claims against him. Plaintiffs also assert that Williams's invocation of the indemnification Agreement is not one "as permitted by law," and therefore violative of ERISA. Plaintiffs' contention is that Williams cannot claim, on the one hand, that he is not a fiduciary of the Fund, and, on the other hand, claim that he is entitled to benefits only available to such a fiduciary. Plaintiffs argue that ERISA bars indemnification of a fiduciary who has breached his or her fiduciary duty. At oral arguments on the motion, plaintiffs also contended that advancing Williams his attorneys' fees would be a "loan" in violation of ERISA.

Williams filed a reply to plaintiffs' resistance on November 28, 1994, in which he argued that the cases upon which plaintiffs rely involve denial of attorneys' fees under the indemnification agreement once liability for breach of fiduciary duty has been found, or denial of advancement of attorneys' fees because of a factual dispute concerning contractual entitlement, both situations Williams asserts are absent here.

The court held oral arguments on this and other motions pending in this matter on September 27, 1995.[1] At the hearing, plaintiffs were represented by counsel John O'B. Clark of Highsaw, Mahoney & Clarke, P.C., Washington, D.C. and Roger Stone of Simmons, Perrine, Albright & Ellwood, L.J.P., Cedar Rapids, Iowa. Defendant Edward I. Williams was represented by Joseph F. McDonough of Manion, McDonough & Lucas, P.C., Pittsburgh, Pennsylvania.

Before turning to the factual background for this motion and the court's legal analysis, the court must first identify the standards

---

1. This case was reassigned to me on February 3, 1995. I was appointed a district judge for the U.S. District Court for the Northern District of Iowa on August 26, 1994.

applicable to disposition of a motion for summary judgment.

## II. STANDARDS FOR SUMMARY JUDGMENT

■ The Eighth Circuit Court of Appeals recognizes "that summary judgment is a drastic remedy and must be exercised with extreme care to prevent taking genuine issues of fact away from juries." *Wabun–Inini v. Sessions,* 900 F.2d 1234, 1238 (8th Cir.1990). On the other hand, the Federal Rules of Civil Procedure have authorized for nearly 60 years "motions for summary judgment upon proper showings of the lack of a genuine, triable issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). Thus, "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Wabun–Inini,* 900 F.2d at 1238 (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986)); *Hartnagel v. Norman,* 953 F.2d 394, 396 (8th Cir.1992).

■ The standard for granting summary judgment is well established. *Rule 56* of the Federal Rules of Civil Procedure states in pertinent part:

Rule 56. Summary Judgment

(b) For Defending Party. A party against whom a claim ... is asserted ... may, at any time, move for summary judgment in the party's favor as to all or any part thereof.

(c) Motions and Proceedings Thereon.... *The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the*

*moving party is entitled to judgment as a matter of law.*

*Fed.R.Civ.P.* 56(b) & (c) (emphasis added); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Beyerbach v. Sears,* 49 F.3d 1324, 1325 (8th Cir.1995); *Munz v. Michael,* 28 F.3d 795, 798 (8th Cir.1994); *Roth v. U.S.S. Great Lakes Fleet, Inc.,* 25 F.3d 707, 708 (8th Cir.1994); *Cole v. Bone,* 993 F.2d 1328, 1331 (8th Cir.1993); *Woodsmith Publishing Co. v. Meredith Corp.,* 904 F.2d 1244, 1247 (8th Cir.1990); *Wabun–Inini,* 900 F.2d at 1238 (citing *Fed.R.Civ.P.* 56(c)).[2] A court considering a motion for summary judgment must view all the facts in the light most favorable to the nonmoving party or parties, here the plaintiffs, and give the plaintiffs the benefit of all reasonable inferences that can be drawn from the facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)); *Munz v. Michael,* 28 F.3d 795, 796 (8th Cir.1994); *Allison v. Flexway Trucking, Inc.,* 28 F.3d 64, 66 (8th Cir.1994); *Johnson v. Group Health Plan, Inc.,* 994 F.2d 543, 545 (8th Cir.1993); *Burk v. Beene,* 948 F.2d 489, 492 (8th Cir.1991); *Coday v. City of Springfield,* 939 F.2d 666, 667 (8th Cir.1991), *cert. denied,* 502 U.S. 1094, 112 S.Ct. 1170, 117 L.Ed.2d 416 (1992).

■ Procedurally, the moving party, here Williams, bears "the initial responsibility of informing the district court of the basis for [its] motion and identifying those portions of the record which show lack of a genuine issue." *Hartnagel,* 953 F.2d at 395 (citing *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552); *see also Reed v. Woodruff County, Ark.,* 7 F.3d 808, 810 (8th Cir.1993). Williams is not required by *Rule 56* to support his motion with affidavits or other similar materials negating the opponent's claim. *Id.*

---

**2.** An issue of material fact is genuine if it has a real basis in the record. *Hartnagel v. Norman,* 953 F.2d 394 (8th Cir.1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986)). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Beyerbach,* 49 F.3d at 1326; *Hartnagel,* 953 F.2d at 394.

"When a moving party has carried its burden under *Rule* 56(c), its opponent must do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1355. The plaintiffs are required under Rule 56(e) to go beyond the pleadings, and by affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." *Fed. R.Civ.P.* 56(e); *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *McLaughlin v. Esselte Pendaflex Corp.,* 50 F.3d 507, 511 (8th Cir.1995); *Beyerbach,* 49 F.3d at 1325. Although "direct proof is not required to create a jury question, ... to avoid summary judgment, 'the facts and circumstances relied upon must attain the dignity of substantial evidence and must not be such as merely to create a suspicion.'" *Metge v. Baehler,* 762 F.2d 621, 625 (8th Cir.1985) (quoting *Impro Products, Inc. v. Herrick,* 715 F.2d 1267, 1272 (8th Cir.1983), *cert. denied,* 465 U.S. 1026, 104 S.Ct. 1282, 79 L.Ed.2d 686 (1984)), *cert. denied sub nom. Metge v. Bankers Trust Co.,* 474 U.S. 1057, 106 S.Ct. 798, 88 L.Ed.2d 774 (1986). The necessary proof that the nonmoving party must produce is not precisely measurable, but the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Allison v. Flexway Trucking, Inc.,* 28 F.3d 64, 66 (8th Cir.1994).

In *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510, *Celotex,* 477 U.S. at 323–24, 106 S.Ct. at 2552–53, and *Matsushita,* 475 U.S. at 586–87, 106 S.Ct. at 1355–56, the Supreme Court established that a summary judgment motion should be interpreted by the trial court to accomplish its purpose of disposing of factually unsupported claims, and the trial judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. *Johnson v. Enron Corp.,* 906 F.2d 1234, 1237 (8th Cir.1990). The trial court, therefore, must "assess the adequacy of the nonmovants' response and whether that showing, on admissible evidence, would be sufficient to carry the burden of proof at trial." *Hartnagel,* 953 F.2d at 396 (citing *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552). If the plaintiffs fail to make a sufficient showing of an essential element of a claim with respect to which they have the burden of proof, then Williams is "entitled to judgment as a matter of law." *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553; *Woodsmith,* 904 F.2d at 1247. However, if the court can conclude that a reasonable trier of fact could return a verdict for the nonmovant, then summary judgment should not be granted. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510; *Burk,* 948 F.2d at 492; *Woodsmith,* 904 F.2d at 1247. With these standards in mind, the court turns to consideration of the Williams's motion for partial summary judgment.

## III. FINDINGS OF FACT

### A. Undisputed Facts

The record reveals that the following facts are not in dispute. Until his voluntary resignation, Williams was employed by the Fund as Manager of Direct Investments. He was not, however, a Fund officer, investment advisor, administrator, or trustee of the Fund.

The Fund entered into an Amended and Restated Agreement And Declaration of Trust ("the Agreement") on September 22, 1993, under which it is required to advance legal fees to "fiduciaries" who are sued for breach of their fiduciary duties. The key provision of that Agreement is found in paragraph 3p:

As permitted by law, when and if a legal proceeding, government investigation or suit of any kind or nature is instituted against one or more fiduciaries of the Fund, including, but not limited to, the Trustees or the person designated by the Trustees as the "Fund Administrator" in their individual capacities, arising out of their actions as fiduciary or their service to the Fund, said fiduciary(ies) may hire legal counsel approved by the Fund to represent them. In these circumstances, as permitted by law, said legal counsel will be compensated by the Fund for such representation until a final court decision, or a final government agency decision, or a final government agency decision if no court appeal

is filed, finds that such fiduciary in his individual capacity (1) has breached his fiduciary obligations under ERISA; (2) by so doing has caused a loss to the Fund or has gained by use of Fund assets; and (3) is therefore liable in his individual capacity for damages or to return any profit occasioned by such breach to the Fund, complaining person, persons, entity or entities. If the Fund expends money for counsel pursuant to this paragraph, and the individual liability described herein is so finally determined against one or more fiduciaries, each individual found liable shall reimburse the Fund for amounts expended by his counsel.

Agreement, ¶ 3p. No party has presented a predecessor to this 1993 Agreement. The breaches of fiduciary duty plaintiffs allege Williams to be guilty of occurred during his employment with the Fund in 1989 and 1990. However, this lawsuit was not brought until April 29, 1994.

On January 28, 1994, the Fund filed for Chapter 11 bankruptcy relief, owing to losses on its investments.

### B. Disputed Facts

There are undeniably a number of facts disputed between the parties, most of which concern whether or not Williams is a "fiduciary" of the Fund and whether or not he breached his fiduciary duties to the fund. The court agrees that these disputes are material to the ultimate disposition of the parties' claims and defenses. However, the court will consider in the proper place whether these factual disputes are material to disposition of the present motion for partial summary judgment. See Fed.R.Civ.P. 56(c); Anderson, 477 U.S. at 248, 106 S.Ct. at 2510; Matsushita Elec. Indus. Co., 475 U.S. at 586–87, 106 S.Ct. at 1355–56; Hartnagel, 953 F.2d at 396. There are no disputes as to the existence of the Agreement or its terms, although there are legal disputes over Williams's ability to avail himself of the terms of the Agreement.

The court therefore turns to its legal analysis of Williams's motion for partial summary judgment.

### IV. CONCLUSIONS OF LAW

### (Including some ultimate findings of fact)

Before turning to the questions immediately before the court, the court deems it helpful to consider some background on the nature of fiduciaries, and claims of breach of fiduciary duty, under ERISA. The court will then turn to the canons of construction applicable to the indemnity Agreement here, and remaining issues concerning Williams's ability to invoke the Agreement to obtain advancement of his legal fees in these proceedings.

### A. Fiduciaries And Claims Against Them Under ERISA

Plaintiffs' assertion that Williams was a fiduciary of the Fund is founded on 29 U.S.C. § 1002(21)(A), which provides that persons other than trustees may be "fiduciaries" of an ERISA fund

> to the extent (i) he exercises any discretionary authority or discretionary control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A); see also Martin v. Feilen, 965 F.2d 660, 668–69 (8th Cir.1992). The Eighth Circuit Court of Appeals has held that

> one who is an ERISA fiduciary only by reason of § 1002(21)(A) is liable "only to the extent" he exercises discretionary control, renders investment advice, or has discretionary administration responsibility.

Martin, 965 F.2d at 669; Associates in Adolescent Psychiatry, S.C. v. Home Life Ins. Co., 941 F.2d 561, 569 (7th Cir.1991), cert. denied, 502 U.S. 1099, 112 S.Ct. 1182, 117 L.Ed.2d 426 (1992); Dardaganis v. Grace Capital, Inc., 889 F.2d 1237, 1242 (2d Cir. 1989) (finding these liabilities and limitations in 29 U.S.C. § 1105 and 29 C.F.R. § 2510.3–21 (1988)); Leigh v. Engle, 727 F.2d 113, 133–35 (7th Cir.1984). The court therefore

held that professionals who provide services to an ERISA fund are not necessarily fiduciaries. *Id.* (citing, as so holding, *Consolidated Beef Indus., Inc. v. New York Life Ins. Co.,* 949 F.2d 960, 964–65 (8th Cir.1991), *cert. denied,* 503 U.S. 985, 112 S.Ct. 1670, 118 L.Ed.2d 390 (1992) (insurance company and its salesman who sold annuities to plan); *Associates in Adolescent Psychiatry,* 941 F.2d at 568–70 (financial consulting firms); *Baxter v. C.A. Muer Corp.,* 941 F.2d at 451, 455 (6th Cir.1991) (claims processing company); *Pappas v. Buck Consultants, Inc.,* 923 F.2d 531, 535–37 (7th Cir.1991) (actuaries); *Farm King Supply, Inc. v. Edward D. Jones & Co.,* 884 F.2d 288, 292–94 (7th Cir.1989); *Painters of Philadelphia Dist. Council No. 21 Welfare Fund v. Price Waterhouse,* 879 F.2d 1146, 1149–51 (3d Cir.1989) (independent auditors); *Yeseta v. Baima,* 837 F.2d 380, 386 (9th Cir.1988) (attorneys)).

 Various fiduciary duties are imposed upon fiduciaries of ERISA plans by 29 U.S.C. § 1104, and breach of those duties creates liability under 29 U.S.C. § 1109. *See, e.g., Dardaganis,* 889 F.2d at 1239. Thus, one who exercises control over an ERISA fund's account assumes the risk of personal liability. *Id.* at 1242 (citing 29 U.S.C. § 1109(a)); *Yeseta v. Baima,* 837 F.2d 380, 386 (9th Cir.1988). Section 410(a) of ERISA, 29 U.S.C. § 1110(a), provides that "any provision in an agreement or instrument which purports to relieve a fiduciary from responsibility or liability for any responsibility, obligation, or duty under this part shall be void as against public policy." *Packer Eng'g, Inc. v. Kratville,* 965 F.2d 174, 175 (7th Cir.1992). This provision of ERISA led the Seventh Circuit Court of Appeals to "assume that [ERISA] nullifies any provision indemnifying a pension fiduciary who has been found liable" for violating ERISA's extensive fiduciary liability provisions. *Id.* However, the court also asked, "How could anyone take seriously the proposition that ERISA forbids the indemnification of fiduciaries *wrongly* accused of misconduct, when ERISA itself allows a court to award fees to the prevailing side?" *Id.* at 176 (citing 29 U.S.C. § 1132(g)(1) as the authority for such a fee award, and also citing *Continental Can Co. v. Chicago Truck Drivers Pension Fund,*

921 F.2d 126 (7th Cir.1990); *Bittner v. Sadoff & Rudoy Indus.,* 728 F.2d 820 (7th Cir. 1984)). Furthermore, the Department of Labor's interpretive bulletins concerning ERISA anticipate and permit efforts of corporate plan fiduciaries to indemnify employees who perform fiduciary services. *Dardaganis,* 889 F.2d at 1243 (citing 29 C.F.R. § 2509.75–4 (1988)).

 However much plaintiffs may press the issue of whether or not Williams is a fiduciary, and whether he breached his fiduciary duties, the court concludes that these are not the determinative issues on Williams's motion for partial summary judgment to compel advancement of legal fees pursuant to an indemnity agreement. As the court shall show below, whether Williams is or is not ultimately held to be a fiduciary, and whether he has or has not breached a fiduciary duty to the Fund, is irrelevant at this time to the question of whether he is entitled to interim legal fees pursuant to the indemnity agreement in question here.

### B. ERISA And The Indemnity Agreement Here

The fact that ERISA permits indemnity agreements does not end the inquiry on Williams's motion for partial summary judgment, however. The court must first properly construe the indemnity agreement in this case, then determine if the indemnity agreement or advancement of legal fees to Williams under it would be "permitted by law," as ERISA and the Agreement require.

### 1. Construction of the Agreement

 In general, indemnity agreements are strictly construed. *Moses v. Union Pacific R.R.,* 64 F.3d 413 (8th Cir.1995) (Kansas law). The terms of contracts, such as indemnity agreements, must be given their plain and ordinary meaning, and, further, an ambiguity exists only if the contract's language is reasonably susceptible to more than one meaning. *Litton Microwave Cooking Prods. v. Leviton Mfg. Co., Inc.,* 15 F.3d 790, 796 (8th Cir.1994) (rejecting limited reading by indemnitor that did not comport with plain meaning of actual terms of indem-

nity agreement); *U.S. Indus., Inc. v. Blake Constr. Co., Inc.,* 671 F.2d 539, 551 (D.C.Cir. 1982) (rejecting limitations read into agreement by court that were not present in the express language of the indemnity agreement).

 The law of the District of Columbia, which applies to the Agreement in question here, has similar standards for the construction of indemnity agreements. Thus, the District of Columbia Court of Appeals has said that indemnity agreements must be "narrowly construed" so that courts do not read into them any obligations the parties did not intend to assume. *American Building Maintenance Co. v. L'Enfant Plaza Properties, Inc.,* 655 A.2d 858, 861 (D.C.App. 1995); *Rivers & Bryan, Inc. v. HBE Corp.,* 628 A.2d 631, 635 (D.C.1993). In construing and interpreting an indemnity agreement, that "[c]ontractual language is ambiguous if it is susceptible of more than one reasonable interpretation." *American Building,* 655 A.2d at 861; *Rivers & Bryan,* 628 A.2d at 635; *Howard Univ. v. Best,* 484 A.2d 958, 966 (D.C.1984). The question of whether or not language of an indemnity agreement is ambiguous is one of law for the court. *American Building,* 655 A.2d at 861; *Clyburn v. 1411 K. St. Ltd. Partnership,* 628 A.2d 1015, 1017 (D.C.1993). Thus, " 'there is no liability to indemnify unless it is plainly spelled out in the contract.' " *American Building,* 655 A.2d at 861 (quoting *Rosado v. Proctor & Schwartz, Inc.,* 106 A.D.2d 27, 483 N.Y.S.2d 271, 274 (1st Dept.1984)). For example, " 'absent statutory authorization or a contractual provision, each party is responsible for its own attorneys' fees.' " *Id.* at 862 (quoting *Schlank v. Williams,* 572 A.2d 101, 108 (D.C.), *cert. denied,* 498 U.S. 938, 111 S.Ct. 341, 112 L.Ed.2d 306 (1990)). Courts will not readily infer such an obligation to indemnify a party for legal fees "in the absence of explicit and unambiguous contractual language so providing." *Id.* (citing cases so holding).

The court finds no ambiguity whatsoever in the present indemnity agreement. Paragraph 3p unambiguously provides that counsel for a "fiduciary," so far "as permitted by law," "will be compensated by the Fund for

such representation [of a fiduciary] *until a final court decision*" finding the fiduciary liable for misconduct. Thus, the Agreement explicitly provides not only for payment of legal fees, *American Building,* 655 A.2d at 861, but just as explicitly for *interim* payment of fees, because it provides for payment of fees for the representation "until a final court decision" imposing liability for misconduct. A "fiduciary" under the terms of the indemnity agreement is defined broadly, in terms that would include persons held to be fiduciaries only by virtue of 29 U.S.C. § 1002(21)(A). The evident purpose of the indemnity Agreement, protection of employees of the fund from bearing the expense of defending claims against them until misconduct has been proved, is met whether the person alleged to have breached a fiduciary duty defeats that claim on the ground that he or she is not a fiduciary or on the ground that he or she did not breach any fiduciary duty. Because the Agreement contemplates indemnification of a person who is held to be a fiduciary only by virtue of 29 U.S.C. § 1002(21)(A), and provides for interim payment of legal fees while questions of the liability of the alleged fiduciary are litigated, plaintiffs' assertion of an issue of fact as to whether or not Williams is a fiduciary *as they have alleged him to be,* is not material. *See Fed.R.Civ.P.* 56(c); *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510; *Matsushita Elec. Indus. Co.,* 475 U.S. at 586–87, 106 S.Ct. at 1355–56; *Hartnagel,* 953 F.2d at 396. Nor is there any restriction or ambiguity that actions by the Fund itself against the alleged fiduciary are contemplated, because there is no explicit restriction of indemnification to suits brought by third parties. The court will not read such a limitation into the indemnity Agreement when none is actually present in the language of the Agreement. *Litton Microwave Cooking Prods.,* 15 F.3d at 796; *U.S. Indus., Inc.,* 671 F.2d at 551.

In *Atari Corp. v. Ernst & Whinney,* 981 F.2d 1025, 1031 (9th Cir.1992), the Ninth Circuit Court of Appeals applied similar canons of construction to an indemnity agreement to conclude that had the parties intended to provide indemnification to corporate officers only when suits were brought against those officers by third parties, but not when

those officers were sued by the corporate party to the agreement, they could have said so. *Atari*, 981 F.2d at 1032. The court rejected reliance by the district court on its conclusion that "[a]greements by corporations to indemnify corporate executives ... typically contemplate stockholder derivative actions, claims by third parties, and securities and antitrust suits brought by the federal government." *Id.* at 1031. However, the court concluded that

> the district court was wrong to assume that the word "indemnify" necessarily carries with it the baggage of the clauses in which it most frequently appears. The word itself refers to compensation for loss in general, not just to particular types of loss.... The plain, unambiguous meaning of "indemnify" is not "to compensate for losses caused by third parties," but merely "to compensate."

*Id.* at 1031–32. The court concluded that Atari could have limited its obligation to compensate officers of its merger partner to actions brought by third parties, but it had not, using instead language startlingly similar to that found in paragraph 3p of the Agreement in question here, that Atari would indemnify the officers against "all acts and omissions" to the extent permitted by law. *Id.* at 1032.

■ Thus, the court finds that the Agreement unambiguously provides for payment of interim legal fees, or advancement of those fees, until and unless Williams is found guilty of misconduct as a fiduciary.[3] However, the

court must also consider whether indemnification of Williams is not "permitted by law" as required by both ERISA and the Agreement.

## 2. Is the indemnification sought contrary to law?

■ Plaintiff contends that if the Agreement is construed to require the Fund to advance Williams his attorneys' fees and expenses of litigating the breach of fiduciary duty claims against him, such a construction is contrary to law. As an initial matter, it is clear that District of Columbia law, which governs the Agreement, provides no bar to indemnity agreements providing for payment by one party of another party's attorneys' fees in the event of a lawsuit. *See, e.g., General Elevator Co., Inc. v. District of Columbia*, 481 A.2d 116 (D.C.App.1984); *Sundown, Inc. v. Canal Square Assocs.*, 390 A.2d 421 (D.C.App.1978). Other legal objections to indemnification, however, may be more substantial.

■ Although ERISA prohibits, as against public policy, any agreement that purports to relieve a fiduciary of responsibility or liability under ERISA for breach of fiduciary duty, ERISA § 410(a), 29 U.S.C. § 1110(a); *Dardaganis*, 889 F.2d at 1242; *Leigh v. Engle*, 858 F.2d 361, 369 (7th Cir. 1988), even if the breach was in good faith, *Martin v. Walton*, 773 F.Supp. 1524, 1527 (S.D.Fla.1991); *Leigh v. Engle*, 619 F.Supp. 154, 158–59 (N.D.Ill.1985), that prohibition

---

**3.** Were the court compelled to apply, instead of the canons of construction described above, the analysis applicable to determination of whether an ERISA plan's trustee's interpretation of who is entitled to benefits under the plan, the court would still conclude that plaintiffs' interpretation of the Agreement was fatally flawed. In *Lickteig v. Business Men's Assur. Co. of Am.*, 61 F.3d 579 (8th Cir.1995), the Eighth Circuit Court of Appeals recently reiterated that the analysis of an ERISA plan's trustee's interpretation of entitlement to benefits under the plan proceeds by considering five *"Finley* factors": (1) whether the interpretation is consistent with the goals of the ERISA plan; (2) whether it renders any language in the plan meaningless or internally inconsistent; (3) whether it conflicts with the substantive or procedural requirements of the ERISA statute; (4) whether the plan has interpreted the provisions at issue consistently; and

(5) whether the interpretation is contrary to the clear language of the plan. *Lickteig*, 61 F.3d at 583–84. The Fund's interpretation of the Agreement as not providing for interim payment of fees to a person accused of being a fiduciary and of having breached fiduciary duties, is contrary to the goals of the plan, which included protection of employees from the expenses of defending themselves from claims of misconduct until such claims are proved; an assertion that the Agreement does not provide for interim payment of fees renders meaningless the express provisions for such payments; there is no conflict with a substantive or procedural requirement of the ERISA statute, as shall be explained further below; the court is unaware of any prior interpretation that negatives its interpretation here; and such an interpretation is contrary to the clear language of the Agreement.

does not prevent advancement of expenses until liability is determined. In *Spickerman v. Central States, Southeast and Southwest Areas Health and Welfare Fund*, 801 F.2d 257 (7th Cir.1986), the Seventh Circuit Court of Appeals held that both ERISA and a plan with appropriate language permit the interim payment or advancement of legal fees to a person defending a breach of fiduciary duty claim. *Spickerman*, 801 F.2d at 261 & n. 3.[4] Here, the Agreement explicitly provides for such interim payment of legal fees.

■ The court has had some concerns that it might be using an indemnity agreement entered into after the alleged breach of fiduciary duties occurred, and indeed possibly after the alleged fiduciary was no longer employed by the Fund, to find a "retroactive" obligation of advancing legal fees. However, such a concern is laid to rest by the decision of the Seventh Circuit Court of Appeals in *Spickerman*. *Spickerman*, 801 F.2d at 259. In *Spickerman*, the court found that the indemnity agreement in question there could be used to compel the plan to pay interim legal fees of a *former* trustee in a lawsuit against the trustee for actions taken by the trustee prior to implementation of the indemnity agreement. *Id.* Thus, the court concludes that there is no "retroactivity" bar to enforcement of the Agreement to compel plaintiffs to advance to Williams his legal fees in this action.

■ Plaintiffs have also argued that advancement to Williams of his legal expenses would be a loan prohibited by ERISA, presumably relying on §§ 406(a)(1)(B) and (D) of the Act, 29 U.S.C. §§ 1106(a)(1)(B) and (D), which prohibit the extension of credit or the transfer of plan assets to a party in interest. However, plaintiffs have ignored the exception to that rule, specifically applicable here, found in § 408(c)(2), 29 U.S.C. § 1108(c)(2). That provision provides that such transfers are prohibited under ERISA unless it is to a fiduciary "for the reimbursement of expenses properly and actually incurred, in the performance of his duties with

the plan." 29 U.S.C. § 1108(c)(2); *see also Martin*, 773 F.Supp. at 1527. Furthermore, both ERISA and paragraph 3p of the Agreement in question here provide for the return of legal fees advanced from union funds during an unsuccessful defense to a claim of fiduciary imprudence. *See* ERISA § 409(a) & 410(a), 29 U.S.C. §§ 1109(a) & 1110(a); *Morrissey v. Segal*, 526 F.2d 121 (2d Cir. 1975); *Martin*, 773 F.Supp. at 1527; *Highway Truck Drivers and Helpers Local 107 v. Cohen*, 182 F.Supp. 608 (E.D.Pa.1960), *aff'd*, 284 F.2d 162 (3d Cir.), *cert. denied*, 365 U.S. 833, 81 S.Ct. 747, 5 L.Ed.2d 744 (1961). However, restoration of advances for legal fees is not required until there has been a determination that the defendant fiduciary breached his or her fiduciary duty. *Martin*, 773 F.Supp. at 1528. Thus, plaintiffs' assertion that the payments here are a "loan" simply ignores further provisions of ERISA expressly providing for the kind of interim reimbursement Williams is seeking.

### V. CONCLUSION

■ The court concludes that the Agreement in question clearly and unambiguously provides for the interim payment or advance of legal expenses to Williams in the circumstances of this case. No legal objection to that conclusion has been found, and plaintiffs have failed to generate any genuine issue of material fact precluding judgment as a matter of law. Therefore, Williams's motion for partial summary judgment is granted. Plaintiffs are directed to advance Defendant Williams's legal expenses until and unless he is determined to be liable on plaintiffs' claims that he breached fiduciary duties to the Fund.

**IT IS SO ORDERED.**

---

4. *Spickerman* does not hold that such advances are improper, as plaintiffs appear to contend. Rather, it holds that there was a genuine issue of material fact as to whether the plan abused its discretion by refusing to make *periodic* payments of legal fees, even where the terms of the plans' indemnity agreement specifically provided for payment of *interim* fees.